UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KENNEY FELIX VALDEZ,

      Plaintiff,

v.                                                                                  Civ. No. 15-578 JB/GJF

CAROLYN COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

**PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse or Remand Administrative Agency Decision" ("Motion"), filed on December 11, 2015.  ECF No. 20.  The Commissioner responded on February 29, 2016.  ECF No. 29.  Plaintiff replied on March 28, 2016.  ECF No. 32.  On March 8, 2016, U.S. District Judge James O. Browning referred the above-captioned cause to this Court for recommended findings and disposition.  ECF No. 31. Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that the Motion is not well-taken and recommends that it be denied.

**I.      BACKGROUND**

Plaintiff is a forty-seven year old resident of Santa Fe, New Mexico.  Administrative R. ("AR") 178, ECF No. 13.  He obtained a General Education Diploma ("GED") and completed three years of college.  Pl.'s Mot. 2, ECF No. 20.  Plaintiff is also the father of four minor children.  AR 179.  He has worked as a pizza deliverer, meat clerk, automobile parts sales clerk, truck driver, stocker, loader, and backhoe operator.  AR 75, 213.  Plaintiff reported that he stopped working in August 2012.  AR 212.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II, Sections 216 and 223 of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i), 423 (2012), alleging disability beginning in August 2012 due to numerous physical and mental conditions. AR 178, 211.  Plaintiff's application was denied initially and upon reconsideration.  AR 80, 92. At his request, Plaintiff received a de novo hearing before Administrative Law Judge ("ALJ") Ann Farris on October 9, 2014, at which Plaintiff, his legal counsel, and a vocational expert appeared.  AR 53-79.  On December 8, 2014, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Act.  AR 33-52.  The Social Security Administration's ("SSA's") Appeals Council declined review on May 5, 2015.  AR 1-5. Consequently, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 422.210(a) (2015).

Plaintiff timely filed his appeal with the U.S. District Court on July 6, 2015.  ECF No. 1.

## II.    PLAINTIFF'S CLAIM

Plaintiff's lone allegation of error[1]  is that the ALJ failed to properly analyze the treating source opinion of Dr. Kurt Kastendieck under the treating physician rule.  By Plaintiff's estimation, "[t]he sheer volume of medical tests and examinations performed by Dr. Kastendieck or on his referral overwhelmingly make his opinions more credible and controlling than those of the Agency physicians who never saw, examined, or tested [Plaintiff]."  Pl.'s Mot. 12.  Plaintiff contends that, by not assigning Dr. Kastendieck's opinion controlling weight under the treating physician rule, the ALJ "refus[ed] to follow the Agency's own procedures," thereby prejudicing

---

[1]  Through his Reply, Plaintiff additionally maintains that the ALJ erred by impugning his character and credibility. Pl.'s Reply 5-6, ECF No. 32.  "[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 (10th Cir. 2009). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review.").  Because Plaintiff failed to raise this argument in his Motion, it is improper for the undersigned to consider it now.

Plaintiff and warranting reversal.  Pl.'s Reply 7, ECF No. 32.  Because the Court finds that the ALJ's decision was supported by substantial evidence and applied the correct legal standards, the undersigned recommends that Plaintiff's motion be denied.

## III.   APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[3]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003).  A court should meticulously review the entire record but should

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2015); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.  Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015).  At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1.  If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC").  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e).  In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work.  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).

4

If a claimant is not prevented from performing his past work, then he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).   The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).  If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy.  *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### C.  The Treating Physician Rule

Under the treating physician rule, "the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing *Langley*, 373 F.3d at 1119).  *See* 20 C.F.R. § 404.1527(d)(2) (2015) (defining how the SSA uses medical source opinions, including treating sources, but reserving the final decision on residual functional capacity to the Commissioner); 20 C.F.R. § 416.927(d)(2) (2015) (same).  In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ considers whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is consistent with the other substantial evidence in the record.  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  "If the answer to both these questions is 'yes,' [the ALJ] must give the opinion controlling weight." *Id.*

(citation omitted).  If the opinion is deficient in either of these respects, however, it is not to be given controlling weight.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."  *Pisciotta*, 500 F.3d at 1077.  This inquiry is governed by its own set of factors, which include:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
> (3) the degree to which the physician's opinion is supported by relevant evidence;
>
> (4) consistency between the opinion and the record as a whole;
>
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley*, 373 F.3d at 1119 (quotation omitted).  While an ALJ must consider these factors, she need not expressly discuss each of them in her opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-3P, 2006 WL 2329939 at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").  Rather, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."  *Krauser*, 638 F.3d at 1330 (citing *Watkins,* 350 F.3d at 1300–01). Furthermore, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

6

reasons for that weight." *Oldham*, 509 F.3d at 1258.  If this is not done, a remand is required. *Watkins*, 350 F.3d at 1300.

## IV.   THE ALJ'S DECISION

Pursuant to applicable regulations, the ALJ's opinion considered both the medical records in Plaintiff's case as well as other relevant evidence.  *See* 20 C.F.R. § 404.1527(d)(2) (providing that the SSA "will always consider the medical opinions in [a plaintiff's] case record together with the rest of the relevant evidence [the SSA] receive[s]" when making a disability determination).  Furthermore, her findings on these materials formed the bases of Plaintiff's RFC determination and finding of non-disability.   Two findings principally influenced her conclusions: first, that "Plaintiff's statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely credible," and second, that the opinion of Dr. Kastendieck, M.D., Plaintiff's treating physician, was "not consistent with the record as a whole," and therefore, not entitled to controlling weight.  AR 44.  Given their significance, and following a synopsis of the ALJ's opinion, these two findings will be explored at length.

### A.  Summary of the ALJ's Decision

The ALJ issued her decision on December 8, 2014.  AR 47.  At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 8, 2012.  AR 35.  Because Plaintiff had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two.  AR 35-38.  There, she found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease; (2) obesity; (3) depression; (4) social phobia; (5) generalized anxiety disorder; (6) mood disorder due to general condition; and (7) posttraumatic stress disorder ("PTSD").  AR 35.  In tandem with these findings, the ALJ enumerated each of Plaintiff's non-severe impairments and provided her

rationale for finding them so.  AR 35-37.  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a Listing.  AR 38.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC.  AR 39-45.  "After careful consideration of the record," the ALJ held that Plaintiff could "perform light work as defined in [20 C.F.R. § 404.1567(b) (2015)] except that he must alternate between sitting and standing, for a brief period approximately hourly; cannot engage in kneeling, crouching, or crawling; and should not be required to have any interaction with the general public."  AR 39.

At step four, the ALJ found that Plaintiff could not perform any past relevant work.  AR 45. Accordingly, the ALJ proceeded to step five.  Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy.  AR 46-47.  Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and she denied the claim.  AR 47.

### B.  The ALJ Found Plaintiff's Reported Limitations and Pain Lacking Support

The ALJ discredited the severity of Plaintiff's self-reported symptoms on multiple grounds.  As to his physical limitations, Plaintiff generally complains of "back pain that radiates down his legs" and numbness in his legs "which makes it difficult for him to drive and stand," but the ALJ observed that Plaintiff "was regularly described [from 2011 to 2014] as having a normal gait by medical providers, except on one occasion, in January of 2014."  AR 40-41.  In one example, the ALJ considered that on November 8, 2012, Dr. Elizabeth Lakind described Plaintiff as having "normal strength and muscle tone."  AR 41, 471.  In January 2013, Dr. Lakind

described Plaintiff as having "a normal gait, no abnormalities of movement at rest, and normal strength throughout his body."   AR 41, 426.    Additionally, the ALJ observed that "electrodiagnostic testing[4] performed in 2011 was normal except that there was a non-reproducible prolongation of an H-wave in the right lower extremity."   AR 41, 395.   When this testing was performed in November 2012 again, the ALJ noted that it "was unremarkable."[5]   AR 41.   Similarly, she described magnetic resonance imaging ("MRI") tests performed both in 2011 and in 2013 that diagnosed Plaintiff's degenerative disc disease as mild, rather than severe.   A computed tomography ("CT") scan performed on May 18, 2013, also revealed Plaintiff's degenerative disc disease to be mild, but did show spondylolisthesis[6] at L5.[7]   AR 41, 475.   These results reinforced the ALJ's concern regarding Plaintiff's activities of daily living, which were bereft of problems in taking care of his personal needs (with the exception of getting up from the sofa), but replete with activity, including dusting, putting away laundry, doing dishes, making simple meals, throwing away trash, and shopping at the grocery story.   AR 41-43.[8]

---

[4]   According to one source, "[t]he mainstay of electrodiagnostic assessment of the peripheral nerves is electromyography (EMG) combined with nerve conduction velocity (NCV) testing."   2 ATTORNEYS MEDICAL ADVISOR § 20:21 (2016).   "EMG entails placing needle electrodes in the muscles to detect the nerve impulses transmitted to them when the patient voluntarily uses the muscles or is at rest . . . [t]he test can determine the extent and location of neuromuscular disease, including carpal tunnel syndrome, pinched nerves and degenerative disc diseases."   *Id.*

[5]   The notes of Dr. Elizabeth Lakind both support and exceed the ALJ's conclusion.   In fact, Dr. Lakind not only noted that Plaintiff's electrodiagnostic testing results were unremarkable, as the ALJ described them, but that EMG tests were normal on both sides of his body, thereby showing "improvement in the right H-wave" over Plaintiff's test the year before.   Administrative R. ("AR") 396.

[6]   Spondylolisthesis is a condition "in which one vertebra slips forward upon another, most commonly in the lower lumbar area . . . [s]pondylolisthesis occurs most commonly at the fifth, less often at the fourth, lumbar vertebra." *Id.* § 71:149.

[7]   The year before, in May 2012, this abnormality has been diagnosed as "a spina bifida deformity."   AR 41.

[8]   The ALJ made these findings with citations to the record, including Plaintiff's "Function Report – Adult" [AR 228-35], but it should be noted that the ALJ's descriptions of Plaintiff's daily activities (which were drawn primarily from his self-reporting on his Function Report) differ greatly from his hearing testimony.   *See* AR 61-73.   These discrepancies no doubt informed the ALJ's assessment of Plaintiff's credibility.

The ALJ made similarly negative observations regarding Plaintiff's reported pain.  For his part, Plaintiff alleges "that his pain is a 7 or 8 out of 10, with 10 being the worst pain imaginable, on average."  AR 40.    Based on this reporting, the ALJ found it remarkable that despite having had facet injections, medial branch blocks, and radio frequency ablation[9] to combat his pain, within two weeks of these treatments, Plaintiff complained of *increased* sensitivity in the right, lower lumbar spine.  The ALJ cited to the report of Dr. Michael Malizzo, who on August 2, 2012, commented that despite Plaintiff's claims of increased sensitivity, the only indication he perceived on Plaintiff's physical exam was "tenderness to touch."  AR 41, 333.  The ALJ demonstrated even greater misgivings with Plaintiff's assertions to Dr. Malizzo "that he requires high dosages of opiates for relief and [his] desire to know what type of opiates he would receive if tramadol, a prescription that claimant had at the time, did not relieve his pain."  AR 41.[10]  In the ALJ's judgment, "[t]his desire for high dosages of opiates, with little objective evidence to support [Plaintiff's] reports of pain, suggests that the claimant was reporting pain solely to obtain opiates."  AR 41.

### C.  The ALJ Assigned Little Weight to the Opinions of the Treating Physician

In tandem with these findings, the ALJ also chose not to grant controlling weight to the opinion of Dr. Kastendieck, Plaintiff's treating physician.  AR 44.  Instead, she accorded "little

---

[9] Facet injections involve the "injection of corticosteroids, sometimes combined with anesthetic, directly into the joints."  7 ATTORNEYS MEDICAL ADVISOR § 71:163 (2016).   Medial branch blocks involve injections targeted at blocking nerve roots with an amalgam of contrast agent, steroid, and lidocaine.  Medial branch blocks, as opposed to a singular nerve block, are generally "directed at groups of facets" and are frequently used as a diagnostic technique "where uncertainty exists over the origin of back pain."  Yara Safriel, *Lumbar and Cervical Pain Management Procedures: When and How to Do Them*, APPLIED RADIOLOGY, Dec. 1, 2010, 2010 WLNR 28440170.  Radio frequency ablation involves "burning away the nerve endings of those nerves transmitting pain," but, the relief is only temporary, as "[t]he nerve endings grow back."  *Sawatzky v. United States*, No. 11-CV-03182-RM-GPG, 2013 WL 5303486, at *6 (D. Colo. Sept. 19, 2013) (unpublished).

[10] Dr. Malizzo echoed the ALJ's unease.  In fact, he declared, "I am somewhat concerned about this statement."  AR 333.

weight" to the opinion of Dr, Kastendieck, while giving "significant weight" to the opinions of two state agency consulting physicians, Dr. Jonathan Norcross, M.D., and Dr. Bill Payne, M.D. AR 43-44.[11]   Having thoroughly examined the record, it is clear to this Court that Plaintiff's RFC and determination of non-disability can be directly traced to the respective weights that the ALJ assigned to medical opinions in this case.

### 1.   Observations of Dr. Kurt Kastendieck, Plaintiff's treating physician

Plaintiff states that Dr. Kastendieck "examined and treated [him] in his office" twenty times between April 2013 and April 2014.  Pl.'s Mot. 10.[12]   Records reveal that Plaintiff's first consultation with Dr. Kastendieck occurred on September 26, 2011.  AR 299-301.  At that time, Plaintiff was pursuing a second opinion from Dr. Kastendieck concerning his recurrent back pain.  AR 299.  Although Plaintiff complained of back pain radiating down both legs to the knee, he denied joint pain or stiffness.  AR 299.  Dr. Kastendieck noted that Plaintiff appeared to be in good health and in no acute distress.  AR 301.  Radiology results indicated degenerative disc disease from Plaintiff's third lumbar vertebrae ("L3") to his sacrum ("S1").  AR 301.

Following Plaintiff's initial visit with Dr. Kastendieck, the record details several other occasions where Dr. Kastendieck examined Plaintiff.  On October 6, 2011, Dr. Kastendieck administered an annual physical exam to Plaintiff.  AR 313-20.  Dr. Kastendieck noted that Plaintiff's straight leg raise was without pain. Plaintiff's muscle strength and tone were

---

[11] The ALJ weighed the opinions of at least four other physicians regarding Plaintiff's possible mental impairments. *See* AR 44-45 (discussing the opinions of Dr. Sobhani, Dr. Raicu, Dr. Sanuttli, and Dr. Kelli).  Because their opinions generally fall outside the scope of Plaintiff's allegation of error, their opinions will not be discussed in detail.

[12] Based on the record, Plaintiff did visit Dr. Kastendieck's clinic, Serenity Inc., twenty-four (24) times between April 26, 2013, and September 5, 2014.  AR 581-646.  Of those visits, however, only one examination was conducted by Dr. Kastendieck.  AR 602-604.  The remainder of Plaintiff's treatment was provided by Dr. Kastendieck's physician assistant and medical assistants. AR 581-646 (documenting one visit to Dr. Kurt Kastendieck, twenty-one (21) visits to Ms. Loretta Kastendieck, P.A., one B12 vitamin injection from Rita Garcia, M.A., and one B12 injection from Bea Aguilar, M.A.).

determined to be appropriate for his age and his gait was normal.  AR 319.  Dr. Kastendieck opined that Plaintiff was well-developed, well-nourished, in no acute distress, and that he appeared in good health.  AR 318.  He counseled Plaintiff on his diet and urged him to exercise for thirty (30) minutes three to four times a week.  AR 319.  In December 2011, Dr. Kastendieck noted similar results, and instructed Plaintiff to continue using his transcutaneous electrical nerve stimulation ("TENS") unit.  AR 323-24.  Subsequent visits in late 2012 and early 2013 were generally similar.  Plaintiff continued to complain of and be diagnosed with degeneration of his lumbar discs, but he was consistently described by Dr. Kastendieck, as part of Plaintiff's physical examination, as being well developed and nourished, appropriately groomed, and in no apparent distress.  AR 435-46.

On March 6, 2013, Dr. Kastendieck completed a "Medical Source Statement" questionnaire regarding Plaintiff's physical limitations.[13]  AR 712-16.  Therein, he opined that Plaintiff's symptoms included "low back pain, pain [and] numbness going into legs, fatigue, weakness in legs, [and] stomach pain."  AR 712.  Dr. Kastendieck also stated that Plaintiff's pain would frequently interfere with the attention and concentration needed to perform simple work tasks, but he maintained that Plaintiff was capable of tolerating "low stress jobs."  AR 713. Physically, Dr. Kastendieck assessed that Plaintiff could sit less than two hours and stand/walk less than two hours in an eight-hour workday.  Additionally, he noted that Plaintiff would need to walk for approximately ten minutes every half hour.  Further, he stated that Plaintiff must be able to shift positions at will and would need a ten-minute unscheduled break every one to two

---

[13] The document's limitation to Plaintiff's physical impairments is evidenced by the title itself: "Medical Source Statement: Physical Limitations."  AR 712.

hours.[14]   Dr. Kastendieck maintained that Plaintiff required a cane, but believed he could walk one to two blocks before resting.   In a competitive work situation, he felt Plaintiff could frequently lift less than ten (10) pounds, occasionally lift ten (10) pounds, and rarely lift twenty (20) or fifty (50) pounds.   AR 714.   Dr. Kastendieck maintained that Plaintiff could frequently look down, right, left, and up, as well as hold his head in a static position, but could "never" or "rarely" perform postural movements including twisting, stooping, squatting, or climbing stairs or ladders.   Ultimately, he calculated that Plaintiff would miss more than four days of work per month, owing, in part, to his "mod[erate] to extreme fatigue that adds to pain [and the] above limitations."  AR 715.

Based on the testimony of the vocational expert called at Plaintiff's hearing, Dr. Kastendieck's opinion would have led to a determination of disability.   Specifically, she opined that an individual who could neither sit nor stand/walk for more than two hours in any given work day would be eliminated from "competitive employment." [15]  AR 78.   She also related that an individual who would miss four or more days of work per month "would [be] eliminate[d] [from] competitive employment if done on a consistent basis."  AR 78.   Thus, the placing of "controlling weight" on Dr. Kastendieck's opinion would have necessarily led to a finding of disability for Plaintiff.

### 2.   The ALJ's evaluation of Dr. Kastendieck's opinion

The ALJ elected not to accord Dr. Kastendieck's opinion controlling weight, finding instead that his assessment of Plaintiff's limitations was inconsistent "with the record as a

---

[14]   In the ALJ's opinion, she mentions "a 1-2 hour unscheduled break every 10 minutes."  AR 44.  This appears to be nothing more than a typographical error inverting Dr. Kastendieck's opinion that Plaintiff will require a ten-minute unscheduled break every one to two hours.  AR 714.

[15] Ms. King, the vocational expert called at Plaintiff's hearing, testified that a person who could only stand for three hours in an eight-hour workday, while also being restricted to two hours of sitting per workday, would be eliminated from competitive employment.  AR 78.

whole."  AR 44.  Rather, she accorded his opinion "little weight" and incorporated few of Dr.

Kastendieck's limitations into Plaintiff's eventual RFC.  AR 44.  She did, however, concur with

the lifting limitations ascribed by Dr. Kastendieck, which correspond to the SSA's definition of

light work.  *Compare* AR 714 (stating that Plaintiff can lift and carry up to ten (10) pounds

frequently, ten (10) pounds occasionally, and twenty to fifty (20-50) pounds rarely), *with* 20

C.F.R. § 404.1567(b) (2015) ("Light work involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds.").  The ALJ also incorporated,

in part, Dr. Kastendieck's postural limitations, which are reflected in the RFC's preclusion of

Plaintiff from "kneeling, crouching, or crawling."  AR 39 (integrating Dr. Kastendieck's finding

that Plaintiff could never crouch, and rarely stoop or bend).  Similarly, she adopted in part Dr.

Kastendieck's opinion that Plaintiff must be able to shift position at will from sitting, standing,

or walking through the RFC's proviso that Plaintiff can perform light work "except that he must

alternate sitting and standing, for a brief period approximately hourly."  AR 39.  Beyond these

instances, however, the ALJ found no support for Dr. Kastendieck's opinion of Plaintiff's

physical limitations.

In contrast, the ALJ's disagreements with Dr. Kastendieck's recommended limitations

were legion.  Those conclusions that she chose not to incorporate into Plaintiff's RFC include:

> (1) Plaintiff's pain would frequently interfere with the attention and
> concentration needed to perform simple work tasks;
>
> (2) Plaintiff can sit less than two hours in an eight hour workday;
>
> (3) Plaintiff can stand/walk less than two hours in an eight hour workday;
>
> (4) Plaintiff must walk for ten minutes every thirty minutes;
>
> (5) Plaintiff must be able to shift positions at will and will need a ten
> minute break every one to two hours;

14

> (6) Plaintiff requires a cane to walk;
>
> (7) Plaintiff can walk no more than one to two blocks before resting; and
>
> (8) Plaintiff can rarely or never twist, climb ladders, or climb stairs.

AR 39, 712-16.

The ALJ articulated several grounds for discounting Dr. Kastendieck's opinion. First, she took issue with Dr. Kastendieck's conclusion "that [Plaintiff's] pain would frequently interfere with the attention and concentration needed to perform simple work tasks." AR 44. The ALJ found this in direct conflict with Dr. Kastendieck's finding that Plaintiff was still "capable of performing low stress jobs." AR 44. Additionally, drawing on other evidence in the record, the ALJ noted that Plaintiff "was taking an accounting class as of September 17, 2014," and that "his ability to take classes throughout the period at issue weighs against the credibility of his allegations." AR 43. Also, she observed that in Plaintiff's first function report:

> [Plaintiff] stated that he can count change and reported no difficulties managing his finances. He also acknowledged being good at following written instructions. Moreover, while [Plaintiff] alleged an inability to use his computer because of dizziness, he stated that he spends a significant portion of his day on his recliner watching TV. He also wrote in a function report that he can use a computer for 1 to 1.5 hours at a time, which weighs against his alleged inability to use the computer.

AR 43, 228-35 (internal citations omitted). Each of these facts, reported by Plaintiff himself, led the ALJ to discredit Dr. Kastendieck's opinion that "[Plaintiff's] pain would frequently interfere with the attention and concentration needed to perform simple work tasks." AR 44.

In the same manner, the ALJ looked to the record to discount other limitations assigned by Dr. Kastendieck. Among these, she took specific exception with Dr. Kastendieck's postural limitations. Reviewing the record coextensively with these restrictions, she opined that "[w]hile [Plaintiff] has been noted to have pain when moving his lumbar spine, the record does not

15

include any clinical findings showing that [Plaintiff's] range of motion in his extremities or spine is so significantly reduced that he cannot perform postural movements with any regularity."   AR 44.   Moreover, the ALJ noted the discrepancy in Dr. Kastendieck's finding that Plaintiff needed a cane, when "the record does not show that Dr. Kastendieck, or any other medical provider, ever prescribed the claimant a cane."   AR 44.   She went on to explain that Plaintiff himself reported that he did not require "any assistive devices to ambulate," and based on the record, his "gait has regularly been described as normal."   AR 44.   Lastly, she took issue with Dr. Kastendieck's opinion that Plaintiff would miss more than four work days per month, specifically finding "[t]his opinion is not consistent with the record as a whole."   AR 44.   Taken together, these incongruities prompted the ALJ to assign little weight to Dr. Kastendieck's opinion.

### 3.   The ALJ's evaluation of the opinions of other medical professionals

In contrast to her assessment of the opinions of Dr. Kastendieck, the ALJ gave "significant weight to the opinions of State Agency medical consultants Jonathan Norcross, M.D., and Bill F. Payne, M.D."   AR 43.   By the ALJ's account, "Dr. Norcross and Dr. Payne are experts in Social Security disability evaluation."   AR 44.   Upon their examination of Plaintiff's records, both Dr. Norcross and Dr. Payne (collectively, "consulting physicians") found that Plaintiff "could perform light work except that he can [only] occasionally climb ramps, stairs, ladders, ropes, and scaffolds," and only "occasionally balance, stoop, kneel, crouch, and crawl." AR 43.   *See* AR 88-89 (Dr. Norcross), 104-05 (Dr. Payne).   The ALJ considered these estimations to reflect medical evidence in the record, which showed Plaintiff to have a "normal gait," and further, to echo Plaintiff's own accounts of "going shopping, doing some dusting and laundry, and throwing away the trash."   AR 44.   While Dr. Kastendieck "opined that [Plaintiff] can sit less than 2 hours and stand/walk less than 2 hours in an 8-hour workday," [AR 44] which

could preclude competitive employment, the consulting physicians found that Plaintiff could sit or stand/walk for approximately six hours in an eight-hour workday. AR 88, 104. Further, unlike Dr. Kastendieck, neither consulting physician found that Plaintiff would miss four days of work per month. *See* AR 88, 104. Based on these opinions, the ALJ found the opinions of the consulting physicians "largely consistent with the record as a whole, including the claimant's activities of daily living and treatment notes." AR 44.

## V.   ANALYSIS

Plaintiff argues that the ALJ erred in giving little weight to his treating physician's opinion. Pl.'s Mot. 10-13. The Commissioner responds that "the ALJ reasonably evaluated Dr. Kastendieck's opinion using all the factors identified in 20 C.F.R. § 404.1527(c)," and that "substantial evidence supports the ALJ's decision that Plaintiff was not disabled." Def.'s Resp. 10, 15, ECF No. 29.

A thorough examination of the record and applicable law compels this Court to recommend that the ALJ's decision be affirmed. The Court reaches this recommendation for three reasons. First, the ALJ applied the proper legal standards when allocating weight to the opinion of Plaintiff's treating physician. Second, substantial evidence exists to support the ALJ's determination, both from the medical and non-medical evidence in the record. Finally, the ALJ committed no error in this case by according greater weight to the opinions of consulting physicians than to Plaintiff's treating physician. These premises are discussed *seriatim*.

### A.  The ALJ Properly Applied Relevant Legal Standards

Plaintiff asserts that the ALJ erred "when she failed to give specific legitimate reasons for according the treating physician's opinion little weight." Pl.'s Reply 1. By Plaintiff's account, what reasoning the ALJ did provide for discounting Dr. Kastendieck's opinion was little more

than "pretext," *id.* at 1-2, for the ALJ "to substitute her opinion for that of a medical expert." *Id.* at 3. In short, he complains that the ALJ "failed to weigh Dr. Kastendieck's opinion according the Agency's own rules and regulations." *Id.* at 7.

The Commissioner responds that the ALJ did evaluate Dr. Kastendieck's opinion in conformity with SSA regulations. *See* Def.'s Resp. 10. The Commissioner explains "that the ALJ can discount any medical source opinion (acceptable or otherwise) when it is inconsistent with that person's own treatment notes or the record as a whole." *Id.* (citations omitted). The Commissioner posits that, rather than substituting her opinion for that of a physician, "[t]he ALJ reasonably determined that Plaintiff's subjective complaints were not sufficiently supported by objective clinical findings and were clearly inconsistent with his activities of daily living." *Id.* at 12.

When analyzing a treating physician's opinion, an ALJ must complete a sequential two-step inquiry, "each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. First, the ALJ considers "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta,* 500 F.3d at 1077. If so, the ALJ must give the opinion controlling weight. *Id.* But, if the ALJ decides that "the treating physician's opinion is not entitled to controlling weight," the ALJ proceeds to step two of the inquiry, where she must "consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.*

Here, the ALJ declined to assign controlling weight to the opinion of Plaintiff's treating physician, Dr. Kastendieck. Although she never explicitly stated as much, the assignment is manifested by her allocation of "little weight" to his opinion. AR 44. Because she elected to assign a lower weight to Plaintiff's treating physician, it became incumbent on the ALJ to

consider the six deference factors set forth in regulation and case law.  *See Watkins*, 350 F. 3d at 1301; *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (detailing the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion).

Of the six factors, the ALJ described how Dr. Kastendieck's opinion was not supported by medical evidence in the record or Plaintiff's statements regarding his activities of daily living. She also expressly found that his opinion was not consistent with the record as a whole.  AR 44. Yet, the bulk of her analysis is contained in her preceding, extensive examination of the record. *See* AR 36-43.  Therein, the ALJ considered numerous other deference factors, including the length and frequency of Plaintiff's treatment by Dr. Kastendieck, as well as details of that treatment, including examinations and tests performed.  *See* AR 41 (documenting treatment by Dr. Kastendieck from 2011 to 2013, and cataloguing numerous CT scans, MRI scans, and various diagnostic and therapeutic treatments attempted).  *See also supra* pp. 7-13.  Although the ALJ did not concurrently discuss all relevant evidence while discounting Dr. Kastendieck's opinion, the Tenth Circuit does not require such concurrent discussion.  In a similar case, the Tenth Circuit reasoned that "[a]lthough there was not a contemporaneous discussion of this evidence in discounting [the treating physician's] opinion, in reading the ALJ's decision as a whole, it is evident [the treating physician's] opinion is inconsistent with the record."  *Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) (unpublished).  In *Endriss v. Astrue*, the

19

Tenth Circuit was even more direct: "[t]he ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [the treating physician's] opinion." 506 F. App'x 722, 777 (10th Cir. 2012) (unpublished).

Although the ALJ did not mechanically enumerate and discuss each of the six deference factors, her opinion communicates her consideration of all relevant ones. While an ALJ should consider all of the deference factors, "[t]he ALJ does not have to explicitly discuss each of the six relevant factors in deciding what weight to give a medical opinion; indeed, not all may be relevant in a particular case." *Jones v. Colvin,* 514 F. App'x 813, 818 (10th Cir. 2013) (unpublished) (citing *Oldham,* 509 F.3d at 1258). *See Berumen v. Colvin*, 640 F. App'x 763, 765-66 (10th Cir. 2016) (unpublished) (stating the same). Put another way, "[t]he court does not require a formalistic factor-by-factor analysis in weighing medical opinions so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Castillo v. Astrue*, No. CIV.A. 10-1052-JWL, 2011 WL 13627, at *6 (D. Kan. Jan. 4, 2011) (quoting *Oldham*, 509 F.3d at 1258; *Watkins*, 350 F.3d at 1300). In the instant case, the ALJ specifically assigned little weight to the opinion of Dr. Kastendieck, and, as the following subsection will make clear, *see infra* pp. 22-27, the ALJ gave sufficiently specific reasons, grounded in substantial evidence, for making that determination.

Under analogous circumstances, the Tenth Circuit has consistently affirmed the ALJ's decision to reject a treating physician's opinion. Just this month, the Tenth Circuit affirmed in a case strikingly akin to the instant matter. *See Oceguera v. Colvin*, No. 15-2211, 2016 WL 4162840 (10th Cir. Aug. 4, 2016). In *Oceguera*, the court discussed how the ALJ "noted [the

treating physician's] apparent reliance on [the plaintiff's] allegations and squared that with the unfavorable credibility determination she made elsewhere in the decision. She also contrasted [the treating physician's] findings with [the plaintiff's] admitted activities of daily living. *Id.* at *3. In so doing, the court concluded that the ALJ had considered "'the degree to which the physician's opinion is supported by relevant evidence' and 'consistency between the opinion and the record as a whole.'" *Id.* (quoting *Watkins*, 350 F.3d at 1301). The court emphasized that the ALJ "need not explicitly discuss each [deference] factor." Based on the two deference factors it could discern, the *Oceguera* court was able to ascertain the weight given to the treating physician's opinion and the reasons for that opinion. *Id.* As a result, the Tenth Circuit held the ALJ had been "sufficiently specific" in her discussion of the treating physician's opinion, and affirmed the decision to accord it little to no weight. *Id.*

In a published case from earlier this year, a plaintiff invoked the same argument made by Plaintiff in this case: that the ALJ erred by giving little weight to the limitations prescribed by a treating physician in a medical source questionnaire.[16] *See Allman v. Colvin*, 813 F.3d 1326 (10th Cir. 2016). After reviewing the record, the ALJ found that "neither [the treating physician's] treating notes nor the evidence available as a whole support the degree of limitation she opined." *Id.* at 1332. Moreover, the ALJ stated that "objective testing of [the plaintiff's] memory does not support the degree of limitation." *Id.* On appeal, the Tenth Circuit held "that substantial evidence supports the ALJ's decision to give little weight to [the treating physician]," based on the fact that the physician's opinion "was not consistent with the other substantial evidence in the record." *Id.* The Tenth Circuit eventually affirmed the ALJ's decision, despite the ALJ having discussed only this one *Watkins* deference factor.

---

[16] In the *Allman* case, the questionnaire was titled "Mental Impairment Questionnaire." *Allman v. Colvin*, No. CIV-13-495-FHS-KEW, 2015 WL 1442931, at *5 (E.D. Okla. Mar. 30, 2015), *aff'd*, 813 F.3d 1326 (10th Cir. 2016).

Finally, in *Berumen v. Colvin*, a plaintiff argued that the "ALJ improperly evaluated her treating physician opinions" by not providing "adequate reasons" for assigning them little weight. 640 F. App'x at 765. There, the ALJ found that two treating physicians' medical source questionnaires "[were] not entitled to controlling weight," and based on "the numerous inconsistencies between the treatment records and the questionnaires," she chose to assign them "little weight." *Berumen v. Colvin*, No. 13-CV-02722-MJW, 2015 WL 1138488, at *7 (D. Colo. Mar. 11, 2015) (internal citations and quotation marks omitted), *aff'd*, 640 F. App'x 763. *See Watkins*, 350 F.3d at 1301 (defining consistency between the opinion and the record as a whole as one of six deference factors). On review, the Tenth Circuit held that "the ALJ gave reasons for assigning little weight to the opinions and those reasons were supported by the record evidence." *Id.* They explained that "[a]n ALJ is not required to discuss all of the factors for weighing a medical source opinion in 20 C.F.R. § 404.1527," and correspondingly, they found the ALJ's reasoning for discounting the treating physician opinions – namely, that they were inconsistent with the record – "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing *Oldham*, 509 F.3d at 1258).

Based on this examination of extant case law and relevant regulations, the undersigned finds the ALJ has "provide[d] good reasons that are sufficiently specific to permit meaningful judicial review," *Jones*, 514 F. App'x at 818, and therefore, no error exists in the ALJ's application of the treating physician rule.

### B.  Substantial Evidence Supports the ALJ's Decision

Notwithstanding her proper application of legal standards, the ALJ's opinion is still subject to reversal if it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff argues for reversal on these grounds, contending that "[t]he ALJ's assertion that Dr. Kastendieck's opinion is not consistent with the medical file as a whole has no foundation in the hearing record and such a conclusion is indeed contrary to the substantial evidence of record." Pl.'s Reply 4.  He goes on to claim that "[t]he ALJ failed to cite any substantial evidence in the record that contradicts or conflicts with Dr. Kastendieck's opinion in the Medical Source Statement."  *Id.*  In Plaintiff's opinion, "ALJ Farris apparently did not like Dr. Kastendieck's opinion and overstepped the bounds into the field of medicine to conclude Dr. Kastendieck's opinion lacked support." *Id.* [18]

The Commissioner disputes this claim, asserting instead that "the ALJ's decision is grounded in substantial evidence and free of reversible legal error."  Def.'s Resp. 8.   She explains:

> The ALJ provided a thorough discussion of the evidence of record including noting that Dr. Kastendieck was a treating physician; as well as a reasonable evaluation of the treatment records from his office as well as those of Drs. Melisi, Genovese-Elliott, Crawford, Lakind, Raicu, Malizzo and Sobhani; state agency medical consultants Drs. Norcross, Payne, Santulli and Kelly; Plaintiff's significant activities of daily living, and an analysis of the record as it related to the lack of credibility of his subjective complaints.

*Id.* at 10.  Fundamentally, the Commissioner asserts that "Plaintiff's argument is nothing more than an invitation to the Court to reweigh the evidence and reach a different conclusion."  *Id.* at 13.  She urges the Court to "decline this invitation."  *Id.*

---

[18] Plaintiff's assertion that in rejecting Dr. Kastendieck's opinion the ALJ overstepped her authority into the field of medicine is dubious.  *See* Pl.'s Reply 4.  Implicit in this argument is the notion that the ALJ improperly developed Plaintiff's RFC by not crafting it in precise conformity with one of the medical opinions of record.  The Tenth Circuit requires no such lockstep conformity.  In fact, in *Chapo v. Astrue*, the Tenth Circuit found "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  682 F.3d 1285, 1288 (10th Cir. 2012).  Moreover, the *Chapo* court "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category."  *Id.* at 1288–89 (citations omitted).  Instead, the Court reinforced that "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Id.* at 1288 (internal citations and quotation marks omitted).

The Court concurs with the Commissioner and declines Plaintiff's invitation.  Whether this Court would have made the same factual findings and credibility determination as did the ALJ is not the test; rather, this Court must confine its role to determining whether substantial evidence supports the ALJ's decision and specifically must resist the urge to substitute its own judgment for that of the ALJ, no matter how compelling or heart-rending the Plaintiff's circumstances.

The ALJ's decision is, in fact, supported by substantial evidence, both in its election to assign Dr. Kastendieck's opinion little weight and in Plaintiff's final RFC determination.  That evidence is detailed at length above.  *See supra*, pp. 7-17.  In summary, the ALJ discredited the severity of Plaintiff's self-reported symptoms on several grounds.  She made equally adverse findings concerning Plaintiff's reported pain.  In both instances, the ALJ grounded her findings in the record, citing to Plaintiff's self-reported activities of daily living, treatment notes from numerous doctors, imaging results, and information gathered from both therapeutic and diagnostic treatment techniques.  AR 41-43.  She considered the extensive treatment notes of Dr. Kastendieck and other treating physicians alongside the evaluations of the consulting physicians, Dr. Norcross and Dr. Payne.  AR 43-44.  Taking those opinions in the aggregate and weighing them against the limitations ascribed by Dr. Kastendieck in his questionnaire, the ALJ developed Plaintiff's RFC.  Or, in the Commissioner's words:

> Here, the ALJ considered all of the medical and non-medical evidence, including treating, examining, and state agency medical consultants' opinions, and reasonably based his residual functional capacity finding, in part, on of the findings of treating physicians, Drs. Sobhani, Lakind, Melisi, Crawford and Malizzo; the opinions of the state agency medical consultants, Drs. Norcross and Payne; as well as Plaintiff's activities of daily living.

Def.'s Resp. 13 (citing AR 44-45).  This process more than suffices to meet the relatively low threshold of substantial evidence.  *See Lax*, 489 F.3d at 1084 ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."); *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (holding that adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial [only] if it is overwhelmingly contradicted by other evidence"); *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir. 1992) ("[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence") (internal quotation marks and citations omitted); *Casias v. Sec'y of Health & Human Servs*., 933 F.2d 799, 800 (10th Cir. 1991) ("Substantial evidence is more than a mere scintilla.") (citations omitted).

     This is not to say that substantial evidence does not exist to support Plaintiff's position. Frankly, it does, even within the text of the ALJ's opinion, which Plaintiff highlights in his Reply.  *See* Pl.'s Reply 2-3.[19]  The evidence contained in the record and adduced by Plaintiff demonstrates that Plaintiff had (and no doubt still has) some degree of degenerative disc disease along with recurring pain and possible limitation in his range of motion.  *See* Pl.'s Mot. 13.  But, evidentiary conflicts in the record are the province of the ALJ to resolve.  *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that "the ALJ is entitled to resolve any conflicts in the record"); *Confere v. Astrue*, 235 F. App'x 701, 704 (10th Cir. 2007) (unpublished) (same). Such power is not vested in the reviewing court, which may not "reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).  Thus, despite Plaintiff's prayers to do so, this Court must resist the impulse to

---

[19] Plaintiff also offers an itemized account of Plaintiff's treatment in his Motion.  *See* Pl.'s "Motion to Reverse or Remand Administrative Agency Decision" ("Motion") 3-10, ECF No. 21.

"displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax,* 489 F.3d at 1084 (internal quotation marks and citation omitted).

Recent Tenth Circuit decisions support the Court's position.  In *Allman v. Colvin*, which was discussed *supra*, the Tenth Circuit was faced with contradictory medical evidence in the record.  *See* 813 F.3d at 1332-33.  There, the record contained "support for both the notion that [the plaintiff] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe."  *Id.* at 1333.  Ultimately, the ALJ resolved the conflicts against the treating physician, finding that his "opinion was not 'consistent with the other substantial evidence in the record.'"  *Id.* at 1332 (quoting *Pisciotta*, 500 F.3d at 1077).  The *Allman* court reasoned that "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so."  *Id.* at 1333 (citing *Haga*, 482 F.3d at 1208).  In affirming the ALJ's decision, the Tenth Circuit explained that "[c]oncluding otherwise would require us to reweigh the evidence, a task we may not perform."  *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)).

Later in 2016, the Tenth Circuit reached a similar conclusion.  *See Ray v. Colvin*, No. 15-2149, 2016 WL 3974052, at *2 (10th Cir. July 20, 2016) (unpublished).  In *Ray*, the plaintiff complained that the ALJ failed to account in the RFC for her clinical-level fatigue.  *See id.* at *1.  As in the instant case, the *Ray* court found Plaintiff's claims "undermined by her activities of daily living . . . and other medical evidence in the record."  *Id*. at *2.  Additionally, the court held that "[t]he record contains support for both the notion that [the plaintiff] has a serious fatigue condition and the notion that her fatigue is not a medically determinable impairment."  *Id.*  Ultimately, the Tenth Circuit held that the "ALJ was entitled to resolve such evidentiary conflicts," and affirmed the ALJ.  *Id.* (citing *Allman*, 813 F.3d at 1333).

Based on the above, the undersigned finds substantial evidence to support both the ALJ's assignment of little weight to Dr. Kastendieck's opinion and the RFC she developed for Plaintiff. This Court need not concur with the weight the ALJ allocated to Dr. Kastendieck's opinion nor with the RFC her calculus eventually produced. To the contrary, the undersigned is limited to "review[ing] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hackett,* 395 F.3d at 1172. In this matter, substantial evidence exists in the record, and this Court may not impermissibly reweigh the evidence nor substitute its judgment for the Commissioner's.

### C. The ALJ Did Not Err by Assigning Significant Weight to Consulting Physicians

Although Plaintiff ignores the argument in his Motion,[20] his challenge to the weight assigned to Dr. Kastendieck's opinion carries a concomitant challenge to the weight the ALJ accorded other physicians' opinions. Hence, in the instant matter, Plaintiff is implicitly contesting the ALJ's assignment of "significant weight" to the opinions of the consulting physicians, Dr. Payne and Dr. Norcross. *See* AR 43-44. This claim, just as those discussed above, must also fail.

Under SSA regulations, an ALJ is required to evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215. Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). In those cases where a treating physician's opinion is not

---

[20] Plaintiff attempts to correct his omission by crafting this argument in his Reply. Pl.'s Reply 6-7. Nevertheless, arguments first advanced in a reply are not competent for review, *see supra* note 1, and as a consequence, any arguments advanced by Plaintiff on this point for the first time in his Reply were not considered.

assigned controlling weight, however, an ALJ may properly rely on consulting physicians' opinions.  *See Havenar v. Astrue*, 438 F. App'x 696, 700 (10th Cir. 2011) (citing SSR 96–6p, 1996 WL 374180, at *1–2).  The governing regulation "states that the weight an ALJ may give to the opinions of nonexamining sources 'depend[s] on the degree to which they provide supporting explanations for their opinions,' and that an ALJ should 'evaluate the degree to which these opinions consider all of the pertinent evidence in [a] claim, including opinions of treating and other examining sources.'"  *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (unpublished) (quoting 20 C.F.R. § 416.927(c)(3)). If an ALJ intends to rely on a non-examining physician's opinion, she must explain the weight she is giving to it.  *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 416.927(f)(2)(ii)); *see* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (requiring the ALJ to discuss the weight given to medical source opinions)).

Here, the ALJ chose to give "little weight" to Plaintiff's treating physician and "significant weight" to consulting physicians Dr. Norcross and Dr. Payne.  AR 43.  Notably, unlike the prohibitive limitations suggested by Dr. Kastendieck, both consulting physicians prescribed a "light RFC with postural limitations."  AR 89, 105.  In conjunction with the ALJ prohibiting Plaintiff from crouching, kneeling, and crawling, and according him a sit/stand option, these opinions formed the basis of Plaintiff's RFC.  *See* AR 39.

A review of the record demonstrates that both consulting physicians drafted their opinions pursuant to regulation, thereby allowing the ALJ to accord them significant weight.  *See* 20 C.F.R. § 416.927(c)(3).  At the time he drafted his opinion in January 2013, Dr. Norcross examined medical records from Dr. Kastendieck, Dr. Malizzo at Albuquerque Health Partners,[21] Teambuilders Counseling Services, Dr. Teresa Elliot at Spine and Pain Institute of Santa Fe, and

---

[21] Dr. Malizzo's practice is alternatively referred to as ABQ Health Partners, *see, e.g.*, AR 357, 360-61, and ABQ Health Partners Spine Center, *see, e.g.,* AR 110, 390.

records from both Dr. Malizzo and Dr. Mark Crawford obtained through the New Mexico Health Information Collaborative.  *See* 82-84.  He also considered a function report, work history report, and pain form submitted by Plaintiff.  AR 83.  Based on that information, he concluded that Plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged pain and symptoms, however[,] the objective medical evidence does not reasonably substantiate [Plaintiff's] allegations about the intensity, persistence[,] and functionally limiting effects of the symptoms."  AR 89.  He explained that physical examinations demonstrated "some" tenderness to palpation and dynamic range of motion, but Plaintiff exhibited normal gait, motor function tests, and neurological tests.  AR 89.  Further, his activities of daily living showed that he was "independent overall."  AR 89.  For these reasons, Dr. Norcross opined that the medical evidence of record supported a light RFC with postural limits.  AR 89.

At the reconsideration level, Dr. Payne had access to even more documentation. Alongside the materials examined by Dr. Norcross, Dr. Payne reviewed additional medical records from Dr. Kastendieck and Dr. Lakind, third-party function reports from Plaintiff's wife and from Plaintiff's appointed representative, and new documentation from Teambuilders Counseling Services.  *See* AR 94-97.  The new medical records showed that Plaintiff continued to get treatment for his back pain, but that electrodiagnostic assessment of both his lower extremities was normal.  AR 101.  His diagnosis continued to be chronic lower back pain of unknown origin, although imaging "showed mild diffuse" degenerative disc disease.  AR 101. Further, his new activities of daily living showed "some differences."  AR 101.

Based on "the total medical and non-medical evidence in the file," Dr. Payne found Plaintiff's statements regarding his symptoms "not consistent with [the] totality of the evidence in [the] file."  AR 104.  Like Dr. Norcross at the initial determination level, Dr. Payne noted

Plaintiff's normal gait, motor function examinations, and neurological examinations.  He also commented that Plaintiff's activities of daily living showed him to be independent overall.  AR 105.  After considering Plaintiff's "activities of daily living, the location, duration, frequency [and] intensity of [Plaintiff's] pain and symptoms, precipitating and aggravating factors, medication treatment, and exams," Dr. Payne also assigned Plaintiff a light RFC with postural limitations.  AR 105.

In keeping with SSA regulations, the opinions of both consulting physicians: (1) provided supporting explanations for their positions, and (2) considered all relevant evidence to Plaintiff's claim.  *See* 20 C.F.R. § 416.927(c)(3).  As a consequence, once the ALJ had taken the requisite steps to explain her discounting of Dr. Kastendieck's opinion, she was free to assign a greater weight to the opinions of the consulting physicians.  *See Havenar*, 438 F. App'x at 700 (citation omitted).  At that point, the ALJ's only remaining obligation was to explain the weight she was giving to their opinions.  *See Hamlin*, 365 F.3d at 1215.  This she did, as this opinion details above.  *See supra*, pp. 16-17.  Therefore, no legal error exists in the ALJ's assignment of weight to the opinions of either Plaintiff's treating physician or the consulting physicians.

## VI.     CONCLUSION

In the instant cause, the undersigned finds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.  Further, the undersigned finds that the ALJ properly analyzed and weighed Plaintiff's treating source opinion.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion to Reverse or Remand [ECF No. 20] be **DENIED**, the Commissioner's final decision be **AFFIRMED**, and this action be **DISMISSED**.

**IT IS SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**